## McGREGOR *v.* McGREGOR.

### September, 1864.

The phrase, " an alien, not being an inhabitant of this State "—as used in 2 *R. S.* 69, § 3, enumerating persons incompetent to serve as executors, —applies only to persons who are neither citizens of the United States nor residents within the State.

" Alien," as there used, means one born out of the jurisdiction of the United States, and who has not been naturalized.

To render one incompetent to serve as executor under 2 *R. S.* 69, § 3, on the ground that he is " improvident, or wanting in understanding," it is not sufficient to show that he has an ill-regulated temper, lacks self-control, and is accustomed to use abusive language towards those named as co-executors.

It is no objection to the issue of letters testamentary to one appointed executor by the will, that he has removed from the State, nor that he contested the probate of the will, nor that he has conveyed away the interest which he took as legatee under the will.

James McGregor died in February, 1853, leaving a will and codicil, the last dated 1844, by which three of his sons, James, the respondent; Duncan, the appellant; and Gregor, were named executors. Gregor died before probate of the will. The probate was contested before the surrogate, and a long litigation ensued, during which, James, the respondent, who was born and had always resided in this State, removed to and became a resident of the State of Iowa. Afterward, in the year 1861, he applied to the proper surrogate in this State, for letters testamentary to be issued to him. Duncan McGregor filed objections to granting the application, of which those involved on the present appeal were as follows : 1. That James had removed from and was a non-resident of this State, and a citizen of the State of Iowa. 2. That he was mentally incompetent, and was subject to fits of mental aberration of such nature as to render him at times inadequate to perform the duty of an executor. 4. That he had opposed the probate of the will, and had collusively set up an alleged adverse will, was involved in angry litigation in reference to the estate, and had conveyed away his interest therein. The substance of the testimony appears in the opinions. The surrogate, after hearing the proof, overruled the objections, and granted the letters as

McGregor *v.* McGregor.

prayed for, upon the respondent filing his bond and taking the oath. The supreme court, upon an appeal taken by Duncan, affirmed the order, holding that James was not an alien, and that non-residence was not a disqualification, and that his intemperate passions were not equivalent to drunkenness. Duncan then appealed to this court.

*G. Stow*, for objector, appellant ;—On the point that removal terminated citizenship in the State, cited Buckner *v.* Finley, 2 *Pet.* 590 ; Linsdale *v.* Brewer, *Id.* App. 2 ; Warden *v.* Averill, 2 *Wash.* 298; Dickens *v.* Beal, 10 *Pet. ;* Bank of U. S. *v.* Daniel, 11 *Id.* 54; Hitchcock *v.* Aiken, 1 *Cai.* 460 ; Cooper *v.* Galbraith, 3 *Wash.* 546; Reilly *v.* Lamar, 2 *Cranch*, 344. As to insanity, 1 *Jarm.* 28; 3 *Adams Ecc.* 426 ; 16 *Barb.* 261; 1 *Paige,* 71; 3 *Sandf. Ch.* 351; 2 *R. I.* 235. As to incompetency by reason of absence from jurisdiction, Slaughter *v.* May, 1 *Salk.* 42; 2 *Ld. Raym.* 1071; S. C., 6 *Mod.* 304; 2 *Dane Abr.* 351; 3 *Salk.* 23; *Com. Dig.* tit. Adm.; 4 *Mod.* 15; *Lut.* 343; *Mod. Ca.* 304; *Petersd. Abr.* tit. Adm. B.; *Croke Eliz.* 602. As to renunciation by opposing probate, Ayres *v.* Weed, 16 *Conn.* 291 ; Bockee *v.* Chartres, *Croke Eliz.* 92 ; Thornton *v.* Lee, 4 *Leigh,* 152.

*W. A. Beach*, for petitioner, respondent;—As to capacity, cited Jackson *v.* King, 4 *Cow.* 207; McMahon *v.* Harrison, 6 *N. Y.* 443 ; Emerson *v.* Bowers, 14 *Id.* 449.

T. A. JOHNSON, J.—The first fourteen pages of the points submitted by the appellant's counsel are devoted to an argument to establish the proposition that the respondent, by reason of non-residence in this State, and his residence in another State within the United States, is an alien, and so incompetent to serve as an executor by statute. This proposition is so obviously erroneous and untenable, that little, if anything more than a bare statement of it, is necessary to its refutation. Our statute, amongst other persons declared to be incompetent to serve as executors, specifies, "an alien residing out of this State." BOUVIER, in his *Law Dictionary*, title "Alien," defines an alien to be "one born out of the jurisdiction of the United States, who has not since been naturalized under their

constitution and laws." This is the general and popular understanding of the term, and is the sense in which it is employed in the statute. The respondent is conceded to be a native of this State, and though not an inhabitant thereof at the time the will was proved, was not an alien, and not incompetent on that score.

Upon the subject of the incompetence of the respondent, by reason of the alleged occasional mental aberration, or general want of understanding, it is enough to say that he has been adjudged otherwise by the surrogate. The statute declares those not competent to serve, " who, *upon proof*, shall be *adjudged* incompetent by the surrogate, to execute the duties of the trust by reason of drunkenness, improvidence, or want of understanding." The surrogate has held upon the proof before him that the understanding of the respondent is not affected by any of the causes alleged, and that he is not for that reason incompetent to execute the duties of the trust. An examination of the proof before the surrogate will show that there is no reasonable pretense for saying that any error has been committed in this respect. Residence out of the State does not disqualify, unless the person is an alien, and the distance of his residence in no respect affects his competency to serve. If the applicant is a non-resident of the State, he is not entitled to letters until he has executed the requisite bond, which has been done by the respondent in this case.

There is no reason whatever for claiming that the respondent has renounced his appointment. The letters in question have been granted at his express request, and after the most determined and strenuous opposition. It is not pretended that he has executed an instrument in writing to that effect, nor that his renunciation has been declared or decreed by the surrogate according to the provisions of the statute. There is no authority for the position that opposing the probate of a will finally admitted to probate, and favoring the probate of another instrument as the will, which is rejected, is in law a renunciation. No statute or court has so declared, and the acts themselves have no relation whatever to the question of the acceptance, or renunciation of the appointment, after the will has been proved.

The statute (2 *R. S.* 69, § 1) makes it the duty of the surrogate, when any will of personal estate shall have been admitted to probate, to issue letters testamentary thereon to the persons named therein as executors, if they are by law competent to serve as such. It then provides who shall be deemed incompetent to serve as an executor. I am of the opinion that any person appointed or named as executor in a will is to be deemed competent, unless he is declared incompetent by statute, and that it is the duty of the surrogate to grant letters to every person named as executor in a will, upon his application, who is not declared incompetent to serve by statute. He has no discretion to exercise in the matter, but must obey the requirements of the statute, which is the sole source of his power. To allow surrogates to invent new causes of disqualification and add to those prescribed by statute would be conferring novel and dangerous powers upon these officers of special and limited jurisdiction. But in any view of the case, the respondent was clearly competent to serve as executor, and having applied for letters in pursuance of his appointment by the will the surrogate had no right to refuse them. The appeal seems to me to be entirely without merit. The judgment of the supreme court is therefore right, and should be affirmed.

DENIO, Ch. J,—The counsel for the appellant has laid before us a very ingenious printed argument to sustain the position that the respondent is disqualified from acting as executor by the spirit of the provision declaring *an alien not being an inhabitant of this State* incompetent to serve in that office. 2 *R. S.* 69, § 3. The respondent is a native of this State, but, at the time of applying for letters testamentary, was domiciled in the State of Iowa. He was not an inhabitant of this State, but he was not, in any sense known to the law, an alien. It would be quite preposterous to say that a native born citizen of this State becomes an alien to its laws by going to reside in another of the States in the Union, or even in a foreign country. See Ludlam *v.* Ludlam, 26 *N. Y.* 356. If even the respondent had been born in Iowa, he would have been not only a citizen of the United States, which would have been sufficient to take his case out of the disability of this statute, but

he would, moreover, have been a citizen of this State. The provision of the federal constitution which declares that the citizens of each State shall be entitled to all privileges and immunities of citizens of the several States, precludes the objection of alienage from being set up in any State against a person born in any of the United States, and constitutes all such persons, for all legal purposes, citizens of each State in the federal Union. Art. 4, § 2; Lemmon v. People, 20 N. Y. 562, 607. They are not, it is true, resident citizens of any State except the one in which they are domiciled, and cannot claim any rights belonging peculiarly to residents, out of their own State. But the statutory disability attaches only to such as are both aliens and non-residents. There is no reason to suppose that the term *alien* was used in this statute in any other than its legal sense. That is at the same time its popular meaning, and the word when used simply and without any qualifying language cannot have any other signification than the one which the law and common parlance affix to it. This alleged ground of disqualification cannot, therefore, be sustained.

The fifth class of persons declared by the statute to be incompetent to serve as executors are those who, upon proof, shall be adjudged incompetent, by the surrogate, to execute the duties of such trust, by reason of drunkenness, *improvidence* or *want of understanding.* This language, doubtless, confers upon the surrogate a broad jurisdiction, as the nature of the subject eminently required. Taken in connection with the other classes of disqualified persons mentioned in the same section, it assumes that there are those who are generally competent to make contracts, and who are neither idiots, lunatics, or persons of unsound mind, in the eye of the law, to whom it would yet be unfit to entrust the administration of the estate of a deceased person, though they should be so selected for that purpose by the testator. The defects alleged in the present case are *improvidence* and *want of understanding.* The surrogate and the supreme court have not been able to find, in the proof which has been taken, sufficient evidence to enable them to pronounce against the respondent in either of these respects. Upon a careful reading of the printed testimony, I have come to the same conclusion. The result of the evidence

McGregor *v.* McGregor.

seems to be that the respondent is a competent man of business, of at least the average grade of intelligence. If he had been habitually or generally neglectful of his pecuniary and business affairs, or extravagant or wasteful, to an extent to deserve the character of an improvident man, the fault would have been likely to show itself in the condition of his own estate and pecuniary interests. But the evidence does not show him to be embarrassed or pecuniarily insolvent. For aught that appears, he has a competent property, and is ordinarily prudent and cautious in its management. If, therefore, he shall prove faithless in the administration of the estate of his deceased father, it will not be from inherent defects of character of the nature referred to, but from some other and probably less excusable faults of which the statute did not take notice.

The evidence certainly does disclose defects of temper which have sometimes exhibited themselves in a marked degree. It appears that the will of the deceased, which has been admitted to probate, was contested before the surrogate on the allegation that it had been revoked or superseded by a later testamentary disposition. This later will was propounded by one Buell, who took valuable interests under it, and with whom the respondent acted in concert in the situation. But it was pronounced against by the surrogate, and the earlier will admitted to probate, and the determination was finally affirmed in this court. The respondent's brother, Duncan McGregor, the present appellant, presented the first will, and was the principal party on that side of the controversy. There was another litigation to which the respondent was a party, which involved the title to a tract of land in Iowa claimed by him, and upon which a town had been built, in which his brother, the present appellant, was united in feeling and action with the other party to the controversy. These several lawsuits gave rise to a very angry state of feeling on the part of the respondent toward the appellant; and the only portions of evidence in the present case which materially inculpate the former, consist in angry and intemperate expressions respecting his brother and other persons whom he assumed to be connected with him in these controversies. According to his testimony he repeatedly accused them of perjury, threatened to have them convicted and sent to the State

III—7

prison, and was, on some occasions, so much excited in manner and language that persons who heard him thought him scarcely in his right mind, and some even believed him temporarily insane. I perceive no justification or even palliation for this angry and revengeful state of feeling on his part. If an ill-regulated temper, and lack of self-control, and the resort to abusive language toward a near relative, who was to be associated with him in the trust, were among the disqualifying causes, I should have no hesitation in declaring the respondent unfit for the office of executor. But such grave faults have no natural relation to the qualities of prudence or imprudence; nor do they denote a want of understanding in the sense of the statute. They may render him a disagreeable associate for the respondent, and make the transaction of business between them unpleasant and annoying; but the law does not contemplate the setting aside of an executor named by the testator for such reasons. The selection of executors is not committed to the surrogate's court. The testator is allowed to appoint such persons as he may see fit, provided they do not fall within the classes of incompetent persons mentioned in the statute.

The evidence of intemperate expressions and conduct on the part of the respondent falls very far short of making a case of lunacy or monomania, either permanent or temporary, as respects the respondent.

The statute clearly contemplates that one named as executor may receive letters testamentary though he be not a resident of the State. The provision is that the letters shall be withheld from a non-resident until he shall execute such bonds, with surety, as is required of administrators. 2 *R. S.* 70, § 7.

It may chance that the respondent had conveyed away, without consideration, his interest in the estate of the deceased, as legatee and devisee, to his kinsman Buell; but I do not see that this circumstance has any bearing upon the questions involved in this appeal. It is not necessary that an executor should take an interest under the will, and the alienation of an interest actually given is not, therefore, a disqualification. If it should be said that it indicates a disposition improperly to favor Buell, who had failed in establishing the later testamentary disposition which was rejected, it does not furnish a stronger motive

for an unjust or partial administration for the benefit of that interest that he would have had if he had continued to hold it himself.

I conclude that no error was committed in granting letters to the respondent, and am of opinion that the order appealed from should be affirmed.

All the judges concurred, except H. R. SELDEN, J., who did not vote.

Order affirmed, with costs.