In the Matter of Proving the Last Will and Testament of
BYRON S. BRIGGS, Deceased.

WALTER W. BRIGGS and FRANK J. CREGG, as Special Guardian
for GLADYS BRIGGS BLANCHARD, Appellants; HARRIET C.
BRIGGS, as Executrix, etc., of BYRON S. BRIGGS, Deceased,
Respondent.

(Supreme Court, App. Div., Third Dept., January 5, 1916.)

EXECUTORS AND ADMINISTRATORS—OBJECTION TO APPOINTMENT OF-WIDOW
UPON GROUND THAT SHE HAD DELIBERATELY MURDERED TESTATOR—DUTY OF
SURROGATE TO INQUIRE INTO OBJECTIONS.

Where, in a proceeding for the probate of a will, written objections are
filed by the son of the testator to the issuance of letters testamentary
to the widow on the ground that she had deliberately murdered the
testator for the purpose of thwarting any attempt on his part to make
another will, it is error for the surrogate to refuse to inquire into the
objections before issuing letters to the widow.

Such a person would be " incompetent to execute the duties of executor
by reason of dishonesty " within the meaning of section 2612 of the Code
of Civil Procedure, prior to the amendment of 1914, and should not be
appointed.

It seems, that even though there were no statute and no written law on
the subject, the administration of justice would not tolerate the appoint-
ment of a person guilty of murder under the circumstances charged.

APPEAL by the contestants, Walter W. Briggs and another,
heirs at law and next of kin of the deceased, from a decree and
order of the Surrogate's Court in the county of Madison, entered
in the office of said Surrogate's Court on the 14th day of Sep-
tember, 1914, admitting an alleged will to probate and over-
ruling the appellants' objections to the issuance of letters testa-
mentary thereon to Harriet C. Briggs.

Cregg Brothers & Rulison (Edward W. Cregg of counsel),
for the appellants.

Fitch & Kiley (Edward A. Kiley of counsel), for the respondent.

HOWARD, J. — By the will of Byron S. Briggs, which was offered for probate in the Surrogate's Court of Madison county, Harriet C. Briggs, his wife, was appointed executrix. After the surrogate had overruled certain objections to the probate of the will and announced his conclusion that the will should be admitted to probate, written objections were filed to the issuance of letters testamentary to the widow, on the ground that she had deliberately murdered the testator for the purpose of thwarting any attempt on his part to make another will. The objections were filed by the son of the testator; and his attitude of opposition to the widow was approved by a granddaughter of the testator. These two persons were descendants of the testator by a former wife. They were legatees under the will and had a statutory right to make objections. (See Code Civ. Pro., § 2636.) They stood ready with the witnesses in court and offered to make proof of the serious charges which they had preferred against the proponent of the will. The surrogate declined to hear any proof on the subject and made a decree directing letters testamentary to be issued to the woman who stood before him accused of murder.

Section 2612 of the Code of Civil Procedure, as it stood at the time these proceedings were instituted in June, 1914, provided that a person incompetent to execute the duties of executor by reason of dishonesty should not be appointed; and section 2637 of the Code, as it was at that time, provided that the surrogate must inquire into objections filed against the incompetency of a person named in the will as executor; and that he might, in his discretion, receive proof of the matters alleged as objections. (See Laws of 1893, ch. 686; Laws of 1880, ch. 178.) The surrogate neither made inquiry nor took proof. He made no attempt whatever to probe into these grave, alarming and unusual charges, but rejected all such evidence and in the face

of this accusation of murder he directed letters testamentary to issue to Harriet C. Briggs.

A dishonest person is one " Wanting in honesty or integrity; disposed to cheat or defraud; not trustworthy." This is Webster's definition of a dishonest person. If a wife deliberately murders her husband so as to prevent him from making another will, by which she fears he might disinherit her — murders him for the purpose of securing to herself the benefactions under the will then in existence, is she not a dishonest person within Webster's definition? It is the clear purpose of the murderess, in such a case, to cheat and defraud the persons to whom the testator might devise and bequeath his estate under his new will. The whole incentive to murder is a disposition to cheat and defraud not only the possible future legatees, but the testator himself. It is not revenge, but avarice, which prompts the crime. Such a person is manifestly wanting in honesty and integrity; and such a person is manifestly not trustworthy and is, therefore, incompetent to act as an executrix. Therefore, literally, the objections filed against the proponent herein come within section 2612 of the Code.

But there is a broader view of this subject which we should adopt. If there were no statute and no written law on the subject, it is inconceivable that the administration of justice would tolerate the appointment of a person guilty of murder under the circumstances charged here. It is a well-known maxim of the law that " No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime." (Riggs v. Palmer, 115 N. Y. 506.) It would be a scandal upon our system of jurisprudence and bring our laws into ridicule and contempt if a person proven to have murdered her husband should be invested by the law with the legal right to administer upon the very booty which she had plundered from her victim. It would be shocking for the law to

protect such a person in the enjoyment of the spoil of her iniquity.

The position we are assuming here is amply sustained by the doctrine promulgated in Riggs v. Palmer (*supra*) and in New York Mutual Life Ins. Co. v. Armstrong (117 U. S. 591). But many of the complications and difficulties which present themselves in those cases, and in Ellerson v. Westcott (148 N. Y. 149), are absent from this case. Here the statute specifically authorizes the presentation of objections to the fitness of an executor, and specifically provides that evidence may be taken to establish such objections. The surrogate in this case refused to hear any proof and the question before us is as to whether the surrogate was right in his refusal. We think he was wrong. In refusing to receive proof the surrogate said: " I will hold I will not compel this proponent to meet the charge of murder in this civil action unless I am compelled to do so by higher authority, the Court of Appeals not having passed upon that question when they had ample opportunity to do so. I am going to take that side of it." But we think that the proponent should have been compelled to meet the charge of murder. The charge was presented at the proper time and in the proper place. It would have been almost criminal on the part of the son to have stood idly by while the person whom he believed to be the murderess of his father was invested by the law with the custody of his patrimony. It was his moral duty, as well as his legal right, to protest. The objections were an attack upon the woman's general fitness to act as executrix, upon her integrity, upon her trustworthiness, upon her moral character, upon her probity. The charges branded her with " dishonesty," the very words of the statute, and with a disposition to cheat and defraud, and with the crime of murder perpetrated, deliberately and with a mercenary motive. If it had been admitted that the proponent was guilty of the offense charged against her, it cannot be that the surrogate would have appointed her. But even assuming that the evidence would

have established these charges, the surrogate felt that he ought not to hear the proof. It is possible that the proof might have established the proponent's utter unfitness. Therefore, notwithstanding the gravity of the charges, it follows as a matter of right that the legatees who made the objections should have been afforded an opportunity to present their proof.

In discussing this subject we have been compelled to refer to the charges as they were specified in the written objections. By what we have said we do not, of course, in any manner intimate that we believe the charges well founded. The proponent may be entirely innocent, and nothing that we say here should work to her detriment at the hearing which we are about to order. We are only holding that we think the learned surrogate was in error in refusing to inquire into the objections.

The order of the surrogate should be reversed and a hearing granted to the contestants under the objections filed.

All concurred; LYON, J., in result.

Order of the surrogate reversed and hearing granted to the contestants, with costs.