In the Matter of Proving the Last Will and Testament of
FRANCIS L. LELAND, Deceased.

LALETTA LELAND and Others, Appellants; TIMOTHY M.
CHEESMAN, Respondent.

(*First Department, November* 3, 1916.)

SURROGATE'S COURT — QUALIFICATIONS OF PERSON NAMED AS EXECUTOR —
OBJECTION TO ISSUANCE OF LETTERS FOR WANT OF UNDERSTANDING —
POWER OF COURT TO WITHHOLD LETTERS — CODE CIVIL PROCEDURE CON-
STRUED — DISABILITIES NOT AMOUNTING TO LOSS OF MIND.

The want of understanding which will disqualify a person named as
executor in a will from receiving letters testamentary need not be such
as would authorize the appointment of a committee of his person or
property. Letters may be refused one who, on account of any mental
infirmity, is unfit to discharge the duties of the trust. And, in this
connection, the nature and extent of the duties which will be imposed
upon the executor in any particular case may be considered.

Thus, where an estate is over $5,000,000 in value, and consists in part
of stock giving a controlling interest in two banks, and will also involve
the management of other important affairs, a person named as the exec-
utor and who alone would be empowered to act (the other persons named
having died or refused the trust) will be denied letters on the objection
of those interested in the estate, where he has had two strokes of apo-
plexy, is an elderly man, and is so reduced in physical health as to be
practically confined to his house and under the care of attendants and
needs absolute rest and freedom from strain or responsibility. This is
so, although his physical condition does not amount to actual mental
incapacity.

SEPARATE APPEALS by the defendants, Laletta Leland and
others, and the defendants Frank R. Leland and another, from
a decree of the Surrogate's Court of the county of New York,
entered in the office of said Surrogate's Court on the 12th day of
July, 1916, overruling the objections of the appellants to the
issuance of letters testamentary upon the will of Francis L.
Leland, deceased, to the respondent Timothy M. Cheesman,
and granting to him letters testamentary thereon.

Robert C. Beatty, for the appellants.

L. Laflin Kellogg (William K. Hartpence with him on the brief), for the respondent.

LAUGHLIN, J.—The objections to the qualification of the executor were filed in the Surrogate's Court by the appellants pursuant to the provisions of section 2566 of the Code of Civil Procedure, which authorize any person interested in the estate, among other things, to file objections at any time before letters testamentary are issued, setting forth specifically one or more legal objections to granting the letters to one or more of the persons about to receive the same; and further provides that where such objections are filed the surrogate must stay the granting of letters until the matter is disposed of. The objection to the qualification of the executor, which is presented by these appeals, is that he was incompetent to execute the duties of the trust by reason of want of understanding, and it was evidently filed pursuant to the provisions of section 2564 of the Code of Civil Procedure, which provides, among other things, as follows: " No person is competent to serve as an executor, administrator, testamentary trustee or guardian, who is: *   *   *   5. Incompetent to execute the duties of such trust by reason of drunkenness, dishonesty, improvidence or want of understanding."

The will was executed on the 23d day of April, 1914, and the testator died March 28, 1916. He named three executors, one of whom predeceased him, and another renounced without qualifying, leaving the respondent Cheesman the sole executor. The testator left an estate of upwards of $5,000,000 in value, consisting of stock and bonds and other personal property and real estate, and three speculative accounts with stockbrokers, in which he had a credit balance in the aggregate of nearly $200,000, and he had pledged with the brokers securities of the aggregate value of more than $1,000,000. His real estate consisted of a large apartment house, an extensive factory, an interest in a private school, farm lands, and three villas in Italy. He was a stockholder in a real estate company, of which he was

president, and owned two valuable yachts, which were chartered by the English government for war purposes. He was president of the New York County National Bank, and owned the stock control therein, and the presidency has remained vacant since his death. He also owned the stock control in the West Side Bank. The value of his stock in these two banks was approximately $3,000,000. The will of the testator created a trust which the appellants claim was invalid, and if so they would be entitled to the entire estate after the payment of the expenses of administration and some small cash legacies; but in any event they or the infant children of some of them are entitled thereto.

The appellants contend that the testator could not have foreseen the conditions as they now exist, and that but a single executor would be able to, or attempt to qualify, and that he would be in the impaired state of health which the evidence shows him to have been in at the time of the hearing on the objections; and that the respondent by reason of physical infirmity and impairment of his mental faculties is incompetent to discharge the duties of this trust for want of understanding.

The respondent is sixty-three years of age. He was a physician, but gave up the practice of his profession about fifteen years ago. The evidence shows that he had, in the language of one of the witnesses, a " very well organized mind," and was " rather a scholarly man in all directions." On the 17th day of February, 1914, the respondent suffered a stroke of apoplexy, which resulted in partial paralysis of his right side. He recovered from this stroke to some extent, and was able to transact business and attend eleven of the twelve meetings of the board of directors of the New York County National Bank, of which he was a director. On the 23d day of December, 1915, he had another stroke, which paralyzed his left side, and also his throat and face, and since that time he has been practically confined to his house, and has only been able to go out on the piazza and in a rolling chair attended by a nurse. The second stroke resulted in the loss of his voice, so that he can

only whisper. He is still able, however, to transact some business which can be transacted at home; but he has been obliged to leave it to his bankers to look after his investments. It became necessary to adjourn the hearing on the objections to his qualification to his residence at Garrisons, N. Y., for the purpose of enabling the objectors to call and examine him as a witness. His condition of physical infirmity induced the surrogate to limit his examination. The questions which he was required to answer did not tax his reasoning powers, and it cannot be said that his examination disclosed any want of understanding of the questions on his part. Three experts called by the objectors, who were present at the examination of the respondent, gave testimony tending to show that the respondent's mental faculties have been impaired by the strokes of apoplexy, which have caused two lesions in the brain, one on each side, and the existence of a defect in the brain producing cerebral bulbar paralysis; and that the effect of this condition is to put " a limitation " upon the reasoning powers and powers of concentration and co-ordination, and that while a person thus affected might "have mental activities covering ordinary, simple pursuits of life," those conditions "would not permit the exercise of faculties in the serious responsibilities of long sustained tasks;" and that the probabilities are that in a person of the advanced years of the respondent there will not be very much improvement, and will perhaps be a decrease in mental power; and that one in his condition requires " absolute quiet and regular life, free from any strain or overwork or responsibilities; fresh air and proper food and happly environment;" and that in such case the memory is usually affected, but that the mental examination of the respondent was not conducted to an extent sufficient to enable them to say whether his memory was affected, and that a person in his condition may reason perfectly well for a minute and then become confused and would be unable to continue mental activity for a very long period, and that " intellectual defect and mental limitations are characteristic of such double lesions of the brain;"

and that one so affected would not have the "mental grasp to take in many details of a large operation, to concentrate the mind upon it and co-ordinate results." The effect of the testimony of these experts is that the respondent, by reason of these infirmities has not the power of "sustained effort of thought and mind;" and that an attempt on his part to deal with complex problems of business would produce mental exhaustion and failure of reasoning power and comprehension and memory, and that he would not be able to apply himself closely to business for more than two hours a day, and that this mental condition of the respondent is progressive.

For the respondent, his family physician was called. His testimony does not materially controvert that given by the experts called by the appellants, and he admitted that the respondent's "powers of protracted mental work" have been lessened, and that as a rule the mind of a person suffering from cerebral bulbar paralysis is affected. An expert called by the respondent, who had not seen the respondent since he suffered the strokes of paralysis, testified that paralysis of the motor centers controlling the arms and legs does not necessarily affect the intellectual area of the brain, and that while it was not common for persons who have suffered from two severe strokes of paralysis to become practically normal again as far as their mental conditions were concerned, he claimed that he had known of such cases, and that such cases had occurred.

It is quite plain from the phraseology of the provisions of said section 2564 of the Code of Civil Procedure that the incompetency which disqualifies one for want of understanding to perform the important duties of the trust reposed in an executor need not be such as would authorize the appointment of a committee of his person or property. The section was designed to confer upon the surrogate a broad jurisdiction and to authorize him to withhold letters testamentary from one who, on account of any mental infirmity, is unfit to discharge the duties of the trust. (See McGregor v. McGregor, 1 Keyes, 133.) I am of opinion that the nature and extent of the duties to be discharged by the executor in a particular case may be

considered in determining this question, and the phraseology of the statute would seem to permit this. If there were no duties to be performed in connection with the administration of the estate which would tax the mental faculties of the respondent it might be argued with considerable force that he has not been shown incompetent for want of understanding to perform them down to the time of the hearing of the objections; but with respect to an estate of this magnitude, involving such a variety of property interests, those interested in the estate are entitled to have it administered by one whose mental faculties are not so impaired that he is unable to concentrate his mind upon it and consider it in all its bearings, to the extent essential to a proper management thereof. It is the intention of the law with respect to the administration of estates by executors that those interested therein shall have the benefit of the judgment of the executor with respect to the management and disposition thereof. It is perfectly clear that in the case at bar the respondent would be unable to apply his mind to the management of this vast estate, and that if letters were issued to him, the administration would devolve practically exclusively upon others, and that at most he would be able merely to sign such papers as might be presented to him by others to whom he would necessarily be obliged to delegate his duties. We are of opinion, therefore, that the learned surrogate erred in overruling the objections and in entering the decree granting letters testamentary to the respondent.

It follows that the objections should be sustained and the application of the respondent for letters testamentary denied. The order is, therefore, reversed, with ten dollars costs and disbursements to each set of appellants payable out of the estate, and the proceeding remitted to the Surrogate's Court for further action in accordance with this opinion.

CLARKE, P. J., McLAUGHLIN, DOWLING and PAGE, JJ., concurred.

Order reversed, with ten dollars costs and disbursements to each set of appellants payable out of the estate, and proceeding remitted to Surrogate's Court.