In the Matter of the Estate of JULIA E. CULLEN, Deceased.

Surrogate's Court, New York County, May 10, 1937.

*Clarke & Reilly* [*Thomas A. Clarke* of counsel], for John J. M. O'Shea, executor.

*John B. McCloskey* [*John J. Curtin* of counsel], for the residuary legatee, objectant.

*William F. Lally*, for William M. McCarthy, respondent.

*John B. Kelly* [*William M. Kilcullen* of counsel], for Florence Cullen and Rose Steuber, heirs at law and next of kin.

*John J. King* [*William M. Kilcullen* of counsel], for Julia McDonald, heir at law and next of kin.

*Miller, Owen, Otis & Bailey,* for the Order of Friars Minor of the Province of The Most Holy Name.

*James A. Donegan,* for the Servants for Relief of Incurable Cancer.

DELEHANTY, S. The authentic will of deceased was executed on June 20, 1935. It was admitted to probate on December 21, 1936. It names as her executors the attorney who drew the will and the respondent in this proceeding. Letters testamentary have issued to the attorney who has qualified and is now acting as executor. The issuance of letters to respondent was deferred because of objection made thereto by the residuary legatee who asserts that respondent is not competent to serve as an executor for reasons based on subdivision 5 of section 94 of the Surrogate's Court Act. That is the issue here tried.

Objectant offered the decree and a part of the record made in the trial of a contested probate proceeding which dealt with an instrument to which deceased affixed her signature on July 29, 1935, within a few hours of her death. Objectant also offered proof of various acts and statements of respondent outside that record. Respondent in his own behalf offered proof of his general repute and also some further portions of the same record.

The instrument signed by deceased shortly before her death named respondent as the residuary legatee and the sole executor. Respondent offered that paper as the genuine will of deceased. Objections to its probate were filed by interested parties among whom was the residuary legatee under the authentic will of deceased. Issues were framed in the probate contest. It was tried before the surrogate and a jury in December, 1935. At the close of the trial the surrogate submitted to the jury two questions as follows: (1) " At the time of the execution of said paper on the 29th day of July, 1935, was the said Julia E. Cullen of sound mind and competent to dispose of her estate by will? " (2) " Was the execution of said paper caused or procured by the undue influence of any person or persons? " To the first question the jury returned the answer " no " and to the second the answer " yes."

Those portions of the record of the trial of the contested probate proceeding which include the charge to the jury by the surrogate presiding and which show the nature of the proof presented on the subject of respondent's participation in the procurement of the instrument there offered for probate were taken into the record of this trial solely as evidence of the issues determined by the decree and by the findings of the jury to which reference has just been made. In his charge to the jury the surrogate instructed them to

determine whether the paper propounded was the will of deceased or that of respondent here. In defining the extent of undue influence which would operate to defeat probate of the propounded paper the court advised the jury that they must find such activity of respondent as amounted to moral coercion. The surrogate in explaining the issues to the jury advised them that the contestants in that contested probate were asserting that respondent here had worked his will upon deceased when she was literally on the verge of death, that he had thereby brought to fruition a selfish scheme of personal benefit and that he had enforced his own will for his own benefit upon deceased at a time when she was too enfeebled physically and mentally to resist his domination. The surrogate instructed the jury to determine whether the facts supported these contentions of the contestant. Upon the coming in of the jury verdict the court made the special verdict of the jury a general verdict against the propounded paper and thereafter made the decree in evidence denying probate thereto. By this decree it is adjudged " that the said Julia E. Cullen did not have testamentary capacity at the time of the execution of said purported paper and that the execution of said purported paper by said Julia E. Cullen was caused or procured by undue influence." Respondent here took an appeal from the decree so entered but withdrew it after motion had been made to dismiss it for lack of prosecution. The decree stands as the law of the case so far as the paper of July 29, 1935, is concerned.

The decree in that proceeding conclusively determined that the paper there propounded by respondent was not the will of deceased. That this result was based upon a jury finding of undue influence exerted by respondent upon deceased was expressly decided by the verdict and the decree. Not only as respects the ultimate result but also as respects the facts of undue influence and of lack of testamentary capacity of deceased the decree in the former proceeding is conclusive. " ' It is not the object of the suit, the recovery, or the fruits of the litigation alone, that constitutes the estoppel, but the facts put in issue and found, upon which the recovery is based.' " (2 Freeman on Judgments [5th ed.], § 688.) By facts or matters in issue as distinguished from the ultimate result there is to be understood what is pleaded and controverted. (2 Freeman on Judgments [5th ed.], §§ 690, 698.)

Respondent now urges that the jury findings of both undue influence and testamentary incapacity are inconsistent with each other. He will not be heard now to attack the judgment on the ground that as matter of logic it embraces irreconcilable elements.

Actually there is no logical irreconcilability in the findings. There may be an appearance of contradiction but it is a matter of appearance only. It is not easy always to determine where mental capacity so completely ceases that there is no mind upon which influence can operate. It is plain of course that so long as there are mental faculties which function at all the weaker they are the more susceptible are they to surrender to undue influence. A condition might exist in which there was some mental capacity though not enough to satisfy the requirements of the law of wills and simultaneously there might be operating upon such a mind the undue influence of another. If respondent were dissatisfied with the supposed inconsistency of the findings of the jury and with the court's decree which adopted both findings he had his remedy on the appeal which he abandoned.

A judgment, the cases decide, is conclusive as between the parties relative to every material fact put in issue, actively litigated and finally determined. In a subsequent proceeding between the same parties they will not be allowed again to litigate such facts. (*Stannard* v. *Hubbell*, 123 N. Y. 520, 529; *Reynolds* v. *Ætna Life Ins. Co.*, 160 id. 635, 651; *Gugel* v. *Hiscox*, 216 id. 145, 150; *Schuylkill Fuel Corp.* v. *Neiberg Realty Corp.*, 250 id. 304, 307; *Donohue* v. *N. Y. Ins. Co.*, 259 id. 98, 102; *Marine T. Corp.* v. *Switzerland General Ins. Co.*, 263 id. 139, 147.) Objectant here has sustained the burden of showing that in the prior judgment it was decided that respondent by undue influence procured the signature of testatrix to a spurious will. This undue influence was a material ultimate fact in issue on the determination of which a verdict was rendered. Though the decree in the former proceeding is silent as to the identity of the person guilty of undue influence the excerpts from the record of the former proceeding establish that respondent here was the offender. To resort to the record to eliminate uncertainty as to the import of a judgment is proper. (*Matter of Kirkholder*, 171 App. Div. 153, 156.)

The former judgment having established, *first*, that respondent by undue influence sought to obtain for himself the greater part of deceased's property, and *second*, that respondent offered for probate the paper so improperly obtained and sought to procure its admission as the genuine will of deceased, there is presented the question whether that proof establishes such dishonesty as warrants denial of letters to respondent. Although the nominee of the testatrix is not lightly to be set aside by the court (*Matter of Flood*, 236 N. Y. 408; *Matter of Briggs*, 171 App. Div. 52; *Matter of Rosenfeld*, 157 Misc. 686), the court must hold that the facts established

by proof of the record of the prior probate proceeding suffices to bar respondent.

" Dishonesty, unlike embezzlement or larceny, is not a term of art. Even so, the measure of its meaning is not a standard of perfection, but an infirmity of purpose so opprobrious or furtive as to be fairly characterized as dishonest in the common speech of men." (CARDOZO, J., in *World Exchange Bank* v. *Commercial Casualty Ins. Co.*, 255 N. Y. 1, 5.) Here respondent was adjudged guilty of wrongful conduct in respect of the very *res* which now he seeks the court's authority to administer. The record in the former trial conclusively established that respondent sought to obtain for himself the property which deceased (as the decree admitting the authentic will adjudged) intended should go for charitable purposes. Not only has it been determined that he sought to defraud deceased in her last hours of life but his tender of the fraudulent instrument was itself an attempted fraud upon the court. It is established by the record of the proceeding for the probate of the authentic will that respondent sought to prevent its admission. He filed objections thereto and resisted the motion to strike them out. In other words, every act of respondent respecting the *res* which he now seeks to administer was an act designed to thwart the wishes of deceased as those wishes have been conclusively ascertained by the decrees in evidence. On such a showing of dishonest conduct respecting deceased's own estate those cases which emphasize a testator's right to select his own administrator of his property must be held inapplicable. It cannot be supposed that deceased's wishes, expressed in complete ignorance of the actual intent and purpose of respondent respecting deceased's property, could defeat judicial action to exclude respondent from the administration of the property which he sought but failed to appropriate to himself. The case of *McGregor* v. *McGregor* (1 Keyes, 133; 3 Abb. Dec. 92), upon which respondent chiefly relies, was decided in 1864 prior to the taking into the law of the provision making dishonesty a ground for refusing letters. This additional ground for refusal of letters was added by chapter 79 of the Laws of 1873. Since that amendment there is sound authority to support the conclusion reached by the court. (*Matter of Briggs*, *supra*; *Matter of Kirchner*, 89 Misc. 717.)

Submit, on notice, order denying letters to respondent.