In the Matter of the Estate of Francis A. Dolansky, Deceased.

Surrogate's Court, Schenectady County, November 5, 1949.

*Harold E. Blodgett* for Mary H. Dolansky.
*Harold A. Gordon* for Andrew C. Dolansky.

CAMPBELL, S. Decedent, who was twenty-four years of age and unmarried, died intestate as a result of an automobile accident, on or about July 16, 1949. Both his natural parents survive and each has filed a separate petition for letters of administration, alleging, as one of the assets of decedent's estate, a cause of action for his wrongful death.

Section 118 of the Surrogate's Court Act prescribes the priority of appointment in intestacy, as follows:

" Administration in case of intestacy must be granted to the persons entitled to take or share in the personal property, who are competent and will accept the same, in the following order: * * *

" 4. To the father *or* mother." (Italics supplied.)

This section also provides: "If several persons have an *equal right* to administration, there shall be no preference on account of sex, but that person *must* be appointed, who will, in the judgment of the surrogate, best manage the estate of the intestate." (Italics supplied.)

In the case at bar, both parents have equal rights to appointment and the present statute does not give priority to either one. The parent who will " best manage the estate of the intestate " *must* be appointed.

While a surrogate has discretionary power in selecting between two persons having equal rights to appointment as administrator, such discretion must not be abused. (*Matter of Cavendish,* 255 App. Div. 854.)

The controlling factor is which one of the two petitioners, the mother or the father, will administer this estate and enhance and conserve its assets in the most efficient manner. Each parent contests the other's appointment as the personal representative of this decedent's estate.

Decedent's mother at the hearing held in this court, asserted the father should not be appointed administrator by reason of his habitual drunkenness and improvidence, and counsel for each parent has stipulated that this court may examine and consider proceedings and records of the Children's Court of the County of Schenectady in connection with this decision for the appointment of an administrator.

This record dates back to September 9, 1936, when the husband and father of decedent was summoned before the Children's Court for failure to support his children, including this intestate. On March 2, 1942, he was again before the Children's Court, charged with failure to provide properly for his children

and that they were neglected. The court ordered the father to pay a stipulated amount per week for the support of his children and to refrain from drinking intoxicating liquors. He was placed on probation until the youngest child reached the age of sixteen years. The court sentenced him to six months in the county jail which sentence was suspended.

Again, on August 17, 1945, he was summoned before the same court on violation of his probation, and was sentenced to three months in jail for this offense, which sentence was again suspended. His own testimony before this court was to the effect that he was "around" $400 in arrears in his payments for the support of his children although he testified that during the late war he earned from $80 to $100 a week in a local war plant.

Intestate's father also testified that about four years ago he was convicted of driving an automobile while intoxicated.

An excerpt of this petitioner's testimony follows: "Q. How long have you worked in the General Electric Company? A. It was a year this past May. Q. How steady have you worked down there the last year? A. Pretty steady until my son's death and difficulties at home. Q. Since that time you have not worked steady? A. No sir. Q. Is there work to do? A. That is right. Q. Are you physically able? A. Not right now, since the boy's death I have been under the doctor's care, I was to the doctor yesterday. So much trouble in my home since my boy's death that I have to go to the doctor ever so often. Q. What for? A. Things get funny in my head, I cannot explain. I can not eat and am very nervous. Q. Have you been drinking heavily? A. I drink since the boy's death. Q. Have you been frequently drunk? A. Not often, a few days at a time. * * * Q. Tell the Court the age of your children and their names. Start with the youngest. A. The baby was born July 3rd — this year. Her name is Elizabeth. Q. What is the name and age of the next youngest? A. Carol, she was 5 last March. Q. What child and the name next? A. Marian, she is 10. Then Joan is next and Tommy. They are twins. Q. How old are they? A. 13 years old. Q. What is the name of the next one? A. Robert 20 years old. Q. John next? A. Yes, he is over age.

"Q. Have you ever been convicted of a crime? A. No. Q. What were you convicted for? A. Driving while drunk. Q. That is a crime. When was that? A. Last time over 4 years ago. Mr. Gordon: We will concede that. * * * Q. What punishment were you given for that conviction? A. I was put on probation. Q. For how long? A. A term of 4 years. Q. Did you go to jail sometime subsequent to that? A. I did. Q. What

crime were you convicted of? A. At that time I went for being drunk. * * * Q. That was in Children's Court? A. That is right. Q. How long were you sent to jail? A. I was in 12 days. * * * Q. Now about that $50.00 three weeks ago. How much did you give your wife a week, a week before that? A. You mean 3 weeks ago? Q. Three, four or five weeks, tell the Court. A. My mind is still not clear. I am nervous, please do not bother me, I do not know. * * * Q. It is true that you drink? A. Yes sir, occasionally. Q. You become intoxicated? A. Yes. Q. Is that a habit you have not been able to control? A. That is right. Q. Had you sometime prior,—shortly prior to your son's death, joined an organization, Alcoholics Anonymous, for the purpose of a cure? A. That is right. Q. You say your son's death and your domestic difficulties prayed on·your mind so since that you have abandoned the teachings of A. A.? A. Yes. Q. And you have been drinking since? A. Yes sir. Q. As a result, you have been out of work the past week and a half? A. Yes sir.''

Decedent's mother testified to the many defaults and financial delinquencies of her husband; of his habitual drunkenness and his failure and neglect to provide for his children; that he failed to work because of his drunkenness; that he was unemployed from August 15, 1945, to November of the same year because of his excessive use of intoxicants; that '' he didn't do anything to help his family;'' that decedent herein worked since he was ten years of age to help defray family expenses; that decedent's mother did housework for others to assist with the family finances, and she testified, regarding her husband, that '' all his trouble arose out of drink ''.

Petitioners' son, nineteen years of age, who is attending college and working nights in the General Electric Company to pay his tuition and other expenses, testified his father does not help him, and that he has had to work and save his money for many years to obtain his education and help his mother and the family. This boy testified, in part, as follows: '' Q. How frequently have you seen him drunk the last two or three years? A. This year from January to the present time, I have known him to be drunk 2 or 3 times; you might call them periods of drunkenness, a week or two or more. Q. Extending more than a week or two? A. Yes. Q. Have you seen him where it was a day or two? A. If he is drunk, it is not a day or two, it is days or weeks.''

The judicial duty of this court in a case of this character, where both parents petition for letters of administration and

both have equal rights thereto, is to appoint the parent who will better administer the estate. It must be borne in mind that subdivision 4 of section 118 of the Surrogate's Court Act, employs the word " or " and not the word " and ".

Section 94 of the Surrogate's Court Act provides: " No person is. competent to serve as an executor, administrator, testamentary trustee or guardian, who is: * * *

" 5. Incompetent to execute the duties of such trust by reason of drunkenness, dishonesty, improvidence or want of understanding."

In *Matter of Fichter* (155 Misc. 399, 402) the late Surrogate SLATER stated: " Section 118 of the Surrogate's Court Act makes distinction between ' competent persons ' and ' persons entitled.' The word ' competent ' as defined by Funk & Wagnalls New Standard Dictionary means ' having sufficient ability or authority; possessing the requisite natural or legal qualifications.' Webster's Dictionary defines the word ' competent ' as ' answering all requirements; adequate; sufficient; fit.' The same definitions of the word ' competent ' are also carried in Words and Phrases First Series, page 1358, and Second Series, page 831."

Bouvier's Law Dictionary (Vol. II, Rawle's 3d Revision, p. 1517), defines improvidence as follows: " Such want of care and foresight in the management of property as would be likely to render it less valuable and impair the interests of those who may be or become entitled to it. Such is the construction of the word in a statute excluding one found incompetent by reason of improvidence, to perform the duties of an administrator; *Coope* v. *Lowerre*, 1 Barb. Ch. (N. Y.) 45."

Funk & Wagnalls' Comprehensive Standard Dictionary states that improvidence is " lacking foresight or thrift ".

In *Matter of Leland* (175 App. Div. 62, 67) the court, referring to present section 94, stated the rule as follows: " The section was designed to confer upon the surrogate a broad jurisdiction and to authorize him to withhold letters testamentary from one who, on account of any mental infirmity, is unfit to discharge the duties of the trust. (See *McGregor* v. *McGregor*, 1 Keyes, 133.)"

In *Matter of Flood* (236 N. Y. 408, 411) Judge ANDREWS states: " The word ' improvidence,' however, means more than this. It ' refers to habits of mind and conduct which become a part of the man, and render him generally, and under all ordinary circumstances, unfit for the trust or employment in question.' (*Emerson* v. *Bowers*, 14 N. Y. 449, 454.)"

In *Matter of Phyfe* (115 Misc. 699, 703) Surrogate COHALAN dealt with the meaning of incompetency, stating: " The referee has reported that in his opinion the petitioner is incompetent to receive letters because of ' want of understanding.' * * * This is not a finding that the widow is insane or a lunatic or that she is generally incompetent. It is a ruling that the widow has not the requisite understanding of the duties and responsibilities that she would be called upon to exercise in administering an estate worth $150,000. The statute * * * does not mean that the incompetency which disqualifies one for ' want of understanding ' must be such as would be necessary for a general adjudication of incompetency or the appointment of a committee.' [Citing *Matter of Leland, supra.*] "

Decedent's father filed the first petition on July 20, 1949. The mother's petition was filed July 22, 1949. Both petitions were executed on those respective filing dates. It is well settled that priority in point of time of filing a petition gives no advantage or preference to the first applicant for letters of administration where cross petitions are filed by those having equal rights to the appointment. A decision in favor of the more diligent would tend to encourage unseemly races to the Surrogate's Court from the deathbeds of intestates.

The parent to be appointed in this estate will be entrusted with the institution and prosecution of the cause of action for the alleged wrongful death of this intestate; the marshalling of all assets of the estate; the proper payment of all just bills and claims against decedent, and in due course to account to this court.

A careful and conscientious perusal of the testimony adduced at the hearing, and the record of the Children's Court of this county lead to the conclusion that a fair, just and reasonable exercise of the discretionary powers vested in this court dictate that letters of administration issue to decedent's mother only. Therefore, the petition of the mother, Mary H. Dolansky, is hereby granted and the petition of the father, Andrew C. Dolansky, is denied.

Enter order accordingly.