(47 Misc. Rep. 435.)

### READ v. MACKAY et al.

(Supreme Court, Special Term, New York County.  June, 1905.)

1. GOOD WILL—WHAT CONSTITUTES—FIRM NAMES.

While a firm name may in some cases be deemed a part of the good will of the business, it is not of itself necessarily so, and cannot be in cases of businesses which depend on the personal attributes of the partners engaged therein, such as professional partnerships or banking and brokerage partnerships, in which the name has become a symbol denoting the personal integrity and business qualities of the partners.

[Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Good Will, § 1.]

2. PARTNERSHIP—WHAT IS FIRM PROPERTY—FIRM NAME.

Where partnership articles merely provide for the relinquishment of all claims to the firm name by the retiring partner, and are silent as to the disposition to be made of the name upon the expiration of the partnership by limitation, and the name of the firm which is engaged in the banking and brokerage business has for many years been used as a symbol to denote the personal integrity and business qualities of the partners, it cannot be detached from the personnel of the partners, and sold as an asset of the good will of the business.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Partnership, § 477.]

3. SAME—ACTIONS—INJUNCTION.

Where the firm name of a banking and brokerage firm has been used as a symbol to denote the business qualities and integrity of the members, and the partnership articles contain no provision as to the disposition to be made of the firm name upon the expiration of the partnership, one partner may, after the expiration of the partnership, procure an injunction

to restrain the unauthorized use by the other partner of the firm name, regardless of the pendency of an action against the former for a judicial determination that he has no interest in the firm name.

Action by William A. Read against Donald Mackay and others. On motion for injunction. Granted.

Adrian H. Joline and George W. Wickersham, for plaintiff.
Alton B. Parker and William S. Opdyke, for defendants.

BISCHOFF, J. It is to be regretted that the near approach of the expiration of the copartnership of the parties to this action by limitation so urgently calls for an early decision of this motion; that the discussion of the important and interesting questions involved at deserving length is prevented, save at the expense of serious delay to many other matters now awaiting the court's attention. The parties to this action are copartners, doing business as bankers and brokers under the firm name of Vermilye & Co., and the plaintiff seeks to restrain the defendants' use of the name after the 31st day of March, 1905, the day upon which the partnership will cease, according to agreement. The relief sought in the action is an injunction and a direction for the sale of the good will of the partnership to the highest bidder, and at the outset, therefore, the question is presented whether this firm name may be treated as an asset, as part of the good will of the business, and sold as a part of the partnership property in invitum. It appears that this banking and brokerage business was established in the year 1832 under the name of "Carpenter & Vermilye," and that about the year 1862 the name "Vermilye & Company" first commenced to be used as a firm name, and has been continued as the name of successive partnerships since that time; the right to use the name having been accorded by agreement. The name has thus been carried on by successors of the founder of the business, and, the present partners being unable to agree as to its disposition at the conclusion of the partnership now subsisting, this controversy has arisen. Is this firm name transferable to a purchaser promiscuously selected, and should a court of equity extend its aid to effect such a transfer? These questions must, for obvious reasons, have a controlling effect upon the plaintiff's main prayer for relief. If answered affirmatively, would the transfer not afford an effectual means of deceit? A banker of established reputation would have little, if any, need of another's name. Is it not likely, therefore, that the highest bidder would be one most in need of it and least entitled to wear it? Courts of equity are constituted to dispense justice upon ethical principles. Hence their repugnance to the exercise of authority discordant with the dictates of a sound morality, and which may become a means of deceit. What suggestion of morality, intuitive or inductive, supports the claim that one person should be permitted by purchase to assume the good repute of others? I say good repute, for in that only is the value of a firm name to be found which has remained personal to the members of the firm collectively. The absence of any sanctioning principle led the courts in the earlier definitions of the good will of business to carefully eliminate the firm name, and to confine the good will to advantages flowing from sources other than the name under which the business was conducted.

The exigency of the present case does not admit of a present review of these definitions, but they may be found elaborately collated in Williams v. Farrand, 88 Mich. 473, 50 N. W. 446, 14 L. R. A. 161. Judge Story, in his "Commentaries on the Law of Partnership," did not include the firm name (section 100), and in their report of the proposed Civil Code of the state of New York, dated February 13, 1865, the commissioners, Messrs. David Dudley Field and Alexander W. Bradford, stated the law to be (section 436) that "the good will of a business is the expectation of continued public patronage, but it does not include a right to use the name of any person from whom it was acquired." In Williams v. Farrand, supra, the conclusion of the court was that:

"Good will may be said to be those intangible advantages or incidents which are impersonal, so far as the grantor is concerned, and attach to the thing conveyed. Where it consists of the advantages of location, it follows an assignment of the lease of location. Again, it may not depend at all upon location, as in the case of a newspaper, and it would follow an assignment of all interest in the plant, property, effects, and business. A partnership name may become impersonal, after the death of the parties, and it is then treated like a fictitious or corporate name. A surname may become impersonal when it is attached to an article of manufacture, and becomes the name by which such article is known in the market, and the right to use the name may in consequence follow a grant of the right to manufacture that article."

The latter part of this quotation suggests the development of the law, as expressed by judicial opinion, in its efforts to adjust itself to a change of conditions, to which I shall next refer. With the growth and expansion of trade the courts recognized the facts that a firm name may be so used as to became impersonal to the individuals conducting the business, and in course of time indicate commonly the kind or quality of the article made or dealt in, rather than the personal attributes of the makers or dealers; and that in such a case the firm name, since its use would no longer tend to deceive, may properly be deemed a part of the good will, to be transferable with and as a part of the latter. This view culminated in this state in the decision of our court of last resort in Slater v. Slater, 175 N. Y. 143, 67 N. E. 224, 61 L. R. A. 796, 96 Am. St. Rep. 605, which was to the effect that the business name of a firm of shoe manufacturers and dealers was a part of the good will of the business, subject to compulsory sale, with the good will, upon the death of one of the partners, for the benefit of his estate. The court, however, seemingly guarding against the claim that its conclusion was meant to be of general application, carefully predicated the decision of the facts of the case in hand. At most, therefore, the adjudication last alluded to is authority for the contention that in the case of tradesmen, where the firm name has ceased to point to the personal attributes of the partners, and has become impersonal to them, it will constitute a part of the good will, and is capable of transfer to and for the use of the purchaser of such good will. This is because the name in such a case has acquired some of the constituents of a trade-mark. It remains, however, that if the trade-mark conveys the meaning that the article dealt in is made under the continued supervision of its former owners, persons of known skill, so that its use by another might lead to a fraud, that courts of equity

would not protect such use, and that they will not decree, its sale. 28 Am. & Eng. Ency. of Law, 399; Prince Mfg. Co. v. Prince's Metallic Paint Co., 135 N. Y. 24, 38, 31 N. E. 990, 17 L. R. A. 129. From what has been said, it follows that while a firm name may in some cases be deemed a part of the good will of business, it is not of itself, and necessarily, a part of the good will, and that while in trade it may, under some circumstances, be such, it cannot become a part of the good will in cases of business which depend upon the personal attributes of the partners engaged therein, such as professional partnerships. In such cases it has been ruled that the good will of business does not include the firm name (Morgan v. Schuyler, 79 N. Y. 490, 35 Am. Rep. 543), and that the court will not order a compulsory sale (Slack v. Suddoth, 102 Tenn. 375, 52 S. W. 180, 45 L. R. A. 589, 73 Am. St. Rep. 881). It is quite clear, therefore, that the firm name, while in every case a valuable adjunct to the good will, is not necessarily a part of the good will simply by reason of the fact that it is an established firm name; and in my opinion there is no basis for a distinction between a partnership name of a banking business and a professional partnership for the purposes of the present question. Each is equally distinguishable from a manufacturing or trading partnership, so far as the inclusion or exclusion of the firm name in or from the good will is made to depend upon the personal qualities of the members of the firm. The banker, as such, while, of course, essential to trade and a means of it, is not a trader or tradesman. No more so than is the publisher of a newspaper or magazine, who advertises his patron's wares. His calling partakes rather of the characteristics of an employment, a profession (Banks, Banking, 2 New Internat. Ency. 432; 2 Ency. Americana); his relation to his clients being one involving the greatest trust and confidence. It is difficult to conceive of a calling in which individual qualities may be deemed to be of greater importance in their bearing upon the relations assumed, and the banker's personal probity and integrity are as much an individual characteristic as is the peculiar skill of the legal or medical practitioner. In the employment of the one as much as in the other do these personal attributes of the individual, and his recognized possession of them, play the most conspicuous parts. These personal qualities enter into the calling of the banker no less than they do into that of the lawyer or physician. As was said by the court in Cassidy v. Uhlmann, 170 N. Y. 526, 63 N. E. 554: "In this age of banks and banking, confidence is the cornerstone of the whole business structure." It is impossible so to transfer the individual attributes of the members of a professional firm so as to invest the transferee with the possession of them; hence the name (the symbol of those particular attributes) cannot, it is held, be sold as a part of the business which had its dependence upon them. Every reason for the rule applies as well to the business of a banking firm, and I am bound to hold that the name, while it may be the subject of agreement between the partners, cannot and should not be made the subject of a compulsory sale to any one who will buy. After diligent research, I have not been able to find, nor have I been referred by counsel to, a single instance of a compulsory sale of the good will of a banking firm inclusive of the name. The

cases cited by the learned counsel for the plaintiff do not actually touch the question before me. True, in Glen & Hall Mfg. Co. v. Hall, 61 N. Y. 226, 19 Am. Rep. 278, Commissioner Dwight said:

"It seems plain that if a banking house had acquired a name, such as that of Baring Brothers, though there were no partner of the name of Baring, it would, on general principles of law, and independent of a statute preventing the use of fictitious names, have a property in such name, without reference to the particular place where the business was carried on."

As a general proposition, the words used would be quite correct, as they were in relation to any matter before the court in that case, since a firm would certainly have the right to protect its firm name as against an unauthorized use by others. The cases of Melersh v. Keen, 28 Beav. 453, and Smith v. Everett, 27 Beav. 446, had to do with the regulation of matters between partners by agreement, and had no bearing upon the question of a sale of the name of a banking partnership in invitum. Sections 20 and 21 of the Partnership Law, Laws 1897, pp. 561, 562, c. 420, which provide for the continuation of a partnership name under certain conditions, certainly do not have the effect of making every partnership name the subject of an involuntary sale. The statute neither creates nor enlarges any right of property, and does not invest the parties to a partnership agreement with any intangible rights of property (Hazard v. Caswell, 93 N. Y. 259, 269; Caswell v. Hazard, 121 N. Y. 484, 496, 24 N. E. 707, 18 Am. St. Rep. 833); and there is nothing to suggest a legislative intent that a firm name, which because of the character of the firm is not a part of the good will, should become so through this enactment. Its effect is no more than to remove the penal consequences of the use of a fictitious name, or the names of persons not actually members of the firm, upon compliance with the conditions prescribed. Vermilye & Co., the business name of this partnership, is the symbol used to denote the personal integrity and business qualities of the present partners, the parties to this action, and this symbol cannot be detached from the personnel of the partnership, and sold as an asset with the good will, as I view the case. There must be imported into the articles of a partnership, the business of which is dependent upon the personal attributes of the members of the firm and the confidence of its patrons therein, a mutual understanding that with the termination of the partnership the use of the firm name shall come to an end, unless the partners have otherwise expressly provided, which is not here the case; the articles providing merely for the relinquishment of all claim to the firm name by a partner upon retirement, and being silent as to the disposition to be made of the name upon the expiration of the period for which the partnership was made to endure. While my conclusion is that the plaintiff cannot eventually succeed upon his prayer for a sale of the firm name to the highest bidder, still an injunction should issue to prevent the defendants' unauthorized use of the name as against the plaintiff after this partnership comes to an end. The plaintiff has an interest in the name, whether it be that of ceasing its use or continuing it, which, as the subject of an agreement between the partners, has a value, although it would have no substance in legal contemplation for the purposes of a realization by public sale, and not

in accordance with an agreement between all the partners. Thus, if the defendants were permitted to use the name, notwithstanding the plaintiff's protest, they would deprive the plaintiff of his substantial right to be a party to any agreement touching the continued use of that name, and enough is set forth in the papers before me to justify the plaintiff's apprehension that the defendants do contemplate the use of the name "Vermilye & Company" after March 31, 1905. The fact that the defendants have brought an action for a reformation of the partnership agreement, for the purposes of a judicial determination that the plaintiff has no interest in the name of the firm at the expiration of the present partnership, does not affect the matter now before me. It suffices that the plaintiff has an apparent interest to protect at the present time, which interest may or may not be affected by the adjudication sought in the action referred to. Certainly the action for a reformation of the agreement is not obviously predestined to success, and as the situation stands the plaintiff should be protected.

Motion for injunction granted. The question of security may be determined upon the settlement of the order to be entered hereon.

Motion granted.