---

### In re LATHAM'S WILL.

### In re LATHAM.

(Supreme Court, Appellate Division, First Department. July 7, 1911.)

1. EXECUTORS AND ADMINISTRATORS (§ 15*) — COMPETENCY OF EXECUTORS — "DISHONESTY."

> After a brokerage firm had been dissolved by the death of the member who had contributed all its capital, and the winding up of its business, required by the will of deceased, was nearly complete, A., who had been manager of its cotton department, openly, and after asking permission of the liquidating partner, to which no answer was given, copied names from the mailing list of the firm, and used the copy in sending out circulars, stating his prior connection with such firm, and that he had associated himself with another firm. *Held*, that thereby he was not guilty of dishonesty within Code Civ. Proc. § 2612, subd. 5, declaring one incompetent to serve as an executor who, on proof, is found by the surrogate to be incompetent to execute the duties of such trust by reason of dishonesty.

> [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 32; Dec. Dig. § 15.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. EXECUTORS AND ADMINISTRATORS (§ 15*) — LETTERS TESTAMENTARY — RE-
FUSAL.

Refusal to grant letters testamentary to an executor can be justified
only on the ground of the executor named being incompetent as declared
by Code Civ. Proc. § 2612.

[Ed. Note.—For other cases, see Executors and Administrators, Dec.
Dig. § 15.*]

3. EXECUTORS AND ADMINISTRATORS (§ 15*) — COMPETENCY OF EXECUTORS —
"DISHONESTY."

Dishonesty within Code Civ. Proc. § 2612, subd. 5, declaring one in-
competent to serve as an executor, who, on proof, is found by the surro-
gate to be incompetent to execute the duties of such trust by reason of
dishonesty, means dishonesty in money matters from which a reasonable
apprehension may be entertained that the funds of the estate would not
be safe in the hands of the executor.

[Ed. Note.—For other cases, see Executors and Administrators, Dec.
Dig. § 15.*]

Dowling, J., dissenting.

Appeal from Surrogate's Court, New York County.

In the matter of John C. Latham, deceased. From an order refus-
ing issuance of letters testamentary to Harry Allen, one of the execu-
tors named in the will of said deceased, said Allen appeals. Reversed
and remitted.

Argued before INGRAHAM, P. J., and CLARKE, McLAUGH-
LIN, SCOTT, and DOWLING, JJ.

Joseph H. Choate, Jr., for appellant.
John Thomas Smith, for respondent.

SCOTT, J. This is an appeal by Harry Allen, one of the persons
named as executors in the will of John C. Latham, deceased, from an
order of the Surrogate's Court in the county of New York, refusing
to issue letters testamentary to the said appellant on the declared
ground "that he is incompetent by reason of dishonesty to execute the
duties of his trust as such executor." The objections to his appoint-
ment were made by Elsie G. Latham, the residuary legatee under
said will, and are based upon a charge that after the death of said
John C. Latham and the consequent dissolution of the firm of La-
tham, Alexander & Co., of which he was a partner, the said Allen
"wrongfully and fraudulently obtained a list of the customers of said
firm and delivered the same to the firm of Stephen Weld & Co.,
brokers in the city of New York, in violation of the provisions of the
Penal Law (Consol. Laws 1909, c. 40) § 553, subds. 6 and 7, and
notified the said customers that he had formerly had charge of the
cotton business of Latham, Alexander & Co., and of his proposed
connection with the firm of Weld & Co., and solicited and induced
the said firm to solicit the business of the said customers, to the dam-
age of the estate herein and in violation of his duties as proponent
of his said will, and as an employé of the liquidating partner."
There were other matters gone into on the hearing, such as an alleged
indebtedness to the firm, apparently long since outlawed and forgiven,
and a dispute with the liquidating partner as to the amount of com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pensation to which appellant was entitled. These matters were not included in the formal objection, would have furnished no valid ground for the refusal to issue letters, and are not referred to by the surrogate as a ground for the order appealed from. They therefore need no consideration on this appeal.

[1] The appellant was a brother-in-law of John C. Latham, with whom he had sustained intimate relations for many years, and had been employed since 1901 as the manager of the cotton department of Latham, Alexander & Co., who were brokers dealing in stocks and cotton. The firm of Latham, Alexander & Co. was a peculiar one. The partners originally were John C. Latham, Henry E. Alexander, and Charles Fraser. Latham contributed all the capital, took all the profits, and undertook to pay all the losses and expenses. He also undertook to pay to each of his copartners annually a fixed sum agreed upon in the copartnership articles. This constituted their sole pecuniary interest in the business of the firm. Alexander withdrew from the firm in 1895, so that, when Latham died in 1909, he and Fraser were the sole members of the firm. By his will, John C. Latham, after making provision for his daughter, and giving a number of legacies, constituted his wife his residuary legatee. The twenty-fourth clause of his will read as follows:

"As my copartnership in the firm of Latham, Alexander & Company terminates with my life, I wish and direct the business of said firm to be wound up as speedily as possible."

He appointed his partner Charles Fraser, his brother-in-law Harry Allen, the appellant, and William G. Bristow to be his executors, with broad powers of sale and reinvestment. Immediately after his death, Fraser, as surviving partner, and in accordance with the expressed wishes of Latham, proceeded to wind up and liquidate the business of the firm. As appellant had had charge of the cotton business of the firm, the liquidator naturally retained his services for a time, but it must, of course, have been obvious to every one that, if the business was to be wound up, the appellant would soon be obliged to seek other employment. He was in fact notified on September 17, 1909, by the liquidating partner that his services would not be needed after September 30, 1909. At about the time of, or soon after, the receipt of this letter he made an arrangement to enter the employ of Stephen M. Weld & Co., a firm carrying on the same kind of business which had been carried on by Latham, Alexander & Co. Naturally the appellant's chief value to such a firm was his knowledge of the cotton business, and of persons engaged in that business who might require the services of a broker. It had been the habit of Latham, Alexander & Co. for a number of years to compile each year a book known as "Cotton Customers' and Dealers' Book," which was in effect a mailing list, and was used as such. It contained the names of cotton dealers and other prominent persons in the cotton growing districts; these being generally selected from the mercantile agency books and newspapers. It also contained the names of some persons who had formerly dealt with the firm, and the names of the present active customers. It contained no names of banks or of persons who had dealt or

were presently dealing in stocks through the firm. This book was made up new each year, the current book being used by the clerks and office boys in mailing circulars issued by the firm. The old copies were piled under the desks. None of these books were kept under lock and key, and it is apparent that they were not deemed to be matters to be kept secret. About September 10, 1909, after the cotton business of the firm had been practically closed out, appellant asked the liquidating partner if he might have one of the old lists. Fraser neither consented nor objected, and appellant took one of the old books and had a typewriter copy out some of the names and addresses. This was done in the office, perfectly openly, and without any attempt at concealment. In fact, Fraser saw the copies being made, and knew that they were for appellant. After appellant had been discharged by the liquidating partner and had entered into the employment of Weld & Co., he sent out a circular letter to the persons whose names had been copied for him, stating that he had associated himself with Weld & Co., that he had formerly been associated with Latham, Alexander & Co., offering to execute any orders, and soliciting business for Weld & Co. A few days later, having been informed that the widow and residuary legatee of John C. Latham had objected to the circular he had sent out, appellant voluntarily sent to each person to whom he had sent the former circular another in which he assured the addressees that he had no desire to divert the business from any successor of Latham, Alexander & Co., or possible purchasers of the good will of the firm, but desired that those who had dealt with that firm should preferably continue to deal with such successor or purchaser, rather than with Weld & Co. It is difficult to see what more appellant could have done to repair his error, if error it was, in addressing the former customers of Latham, Alexander & Co. When we come to analyze the complaint of dishonesty against the appellant, it will be found to resolve itself into a charge that it was dishonest to copy names from the mailing list of Latham, Alexander & Co. and to use the copy for sending out circulars. He had a right to seek other employment. He had a right to make use in every proper way of the knowledge of the cotton business which he had acquired while in the employ of Latham, Alexander & Co., and to avail himself of the acquaintances he had thus formed. He had a right to enter into the employ of another firm, and to solicit for himself and for that firm the business of persons in the trade, whether former customers of Latham, Alexander & Co. or not. He was not in the position of a clerk who seeks to undermine his employer's business and steal away his customers, for the firm had been dissolved and required to be wound up. He was not in the position of a partner who, having retired from a firm and sold out his interest in the good will, solicits business from former customers, and thus destroys the value of that which he has sold. There can be no doubt that appellant would have been clearly justified in everything he did if he had made up a mailing list for his circular from memory, instead of copying it out of a discarded mailing list of the firm of Latham, Alexander & Co., and the sole question therefore is whether or not this was dishonest. It certainly was not ac-

companied with the customary earmarks of dishonesty. The appellant did not go about getting the names secretly or furtively. What he did was done openly, so that every one could see, and after asking the permission of the liquidating partner. It is entirely within the probabilities that appellant believed that he had a perfect right to do what he did. He knew that no attempt had ever been made to keep mailing lists secret, and he knew, also, that the firm's business had been absolutely required by the terms of Latham's will to be immediately closed up and liquidated. He knew that the lists of names were of no value to the old firm of Latham, Alexander & Co., and he may well have doubted whether there was associated with such a business as that firm had carried on, a good will which could be transferred to strangers. Morgan v. Schuyler, 79 N. Y. 490; 35 Am. Rep. 543; Read v. Mackay, 47 Misc. Rep. 435, 95 N. Y. Supp. 935. It may be (and it may not be) that under all the circumstances the appellant did wrong in copying the names to make up a mailing list of his own. That question we are not required to pass upon. It is sufficient for the purpose of this appeal to say that we do not find him to have been guilty of dishonesty in the sense in which that word is used in section 2612, subd. 5, of the Code of Civil Procedure, and we are convinced that the learned surrogate cannot have been speaking seriously when he expressed the apprehension that, if the appellant did not know that his conduct was dishonest, he "might unwittingly misappropriate the funds of the estate under the impression that he was acting honestly in so doing."

[2] To refuse to grant letters to an executor named in a will is no light matter, and can be justified only upon the grounds stated in the Code (section 2612). Unless the case be brought within the letter and spirit of the statute, the surrogate has no discretion to refuse letters. McGregor v. McGregor, *40 N. Y. 133–136.

[3] The dishonesty contemplated by the statute must be taken to mean dishonesty in money matters from which a reasonable apprehension may be entertained that the funds of the estate would not be safe in the hands of the executor (Redfield [7th Ed. 1910] § 307). Of course, in the matter of requiring security from an executor the surrogate has a wide discretion, but that power should not be confused with the power to override the wishes of the testator by refusing to issue letters to the executor of his choice.

The order appealed from must be reversed, the objection to the issue of letters testamentary to the appellant overruled, and the matter remitted to the Surrogate's Court to be proceeded with in accordance with the views herein expressed, with $10 costs and disbursements to the appellant to be paid out of the estate.

INGRAHAM, P. J., and McLAUGHLIN and CLARKE, JJ, concur. DOWLING, J., dissents.