In the Matter of the Probate of the Will of MARTIN M. FOSS, Deceased. JOSEPH A. GERARDI, Respondent; MARTIN M. FOSS, JR., et al., Appellants.

First Department, October 27, 1953.

*Bouvier Beals* of counsel (*Cyril Crimmins* with him on the brief; *Bleakley, Platt, Gilchrist & Walker*, attorneys), for appellants.

*Edward V. Gross* of counsel (*K. Frederick Gross* and *Edward V. Gross*, attorneys), for respondent.

BREITEL, J. Objectants, legatees under a will, appeal. Their objections to the issuance of letters testamentary to a coexecutor named in the will were dismissed without the taking of proof. The basis for the objections is the existence of a diversity or conflict of interest between the coexecutor in his representative and in his individual capacities.

The facts, for purposes of this appeal, are not in dispute.

Testator for many years was employed by a book publishing corporation. Upon his retirement in 1944 he was its president. When he retired the corporation agreed to pay him a retirement " salary " of $25,000 a year for life. Testator was also the owner of 1,300 shares of noncumulative preferred stock in the corporation, not subject to call for redemption.

Late in 1944, the corporation instituted a plan for its capital reorganization. The plan required an exchange of new preferred stock for the class held by testator. The new stock was subject to call for redemption. Testator objected to the plan. After negotiating with the corporation he consented to the

exchange of stock, on condition that the corporation would not call the new stock for redemption during his lifetime.

Thereafter, in February, 1947, in violation of its agreement, the corporation reduced his retirement salary from $25,000 to $12,000 a year. In October, 1947, the corporation, again in violation of its agreement, called for redemption the new stock issued to testator in exchange for his former holdings.

Thus, testator's estate presumably has causes of action arising out of the transactions summarized above. This is the circumstance giving rise to the conflict in interest of the coexecutor. The coexecutor, a lawyer, is an officer and director of the corporation, and is also its "house-counsel". He held these offices at the time of the negotiations between testator and the corporation, and at the time of the agreements between them. He is said to have participated not only in these negotiations, but in the decisions of the corporation to reduce testator's salary and to call his stock for redemption.

The Surrogate granted the coexecutor's motion to strike the objections on the ground that the adversity of interest said to exist was not sufficient within the meaning of section 94 of the Surrogate's Court Act to require denial of the appointment. The grounds specified in that section were held to be exclusive, the Surrogate being without discretion to deny appointment on additional grounds.

Concededly, the objections do not cover grounds specified in section 94 of the Surrogate's Court Act rendering a person absolutely incompetent to serve as an executor. These grounds are minority; adjudicated incompetency; alienage; felony; incompetency by reason of drunkenness, dishonesty, improvidence or want of understanding. The further grounds, specified in that section, for a finding of conditional disqualification (circumstances not affording security to interested persons, and nonresidence) are also without application here.

It has been uniformly held heretofore that the grounds for disqualification set forth in section 94 are exclusive, and that the Surrogate's power to refuse letters is limited by that statute (*Matter of Flood,* 236 N. Y. 408; *Matter of Leland,* 219 N. Y. 387; *Matter of Latham,* 145 App. Div. 849). The texts agree. "If the candidate cannot be slotted in any subdivision listing a disqualifying cause he may act" (2 Jessup-Redfield on Surrogate's Law and Practice [1947], § 1284. Accord, 2 Butler on New York Surrogate Law and Practice [1941], § 1161; 2 Warren's Heaton on Surrogates' Courts [1952], § 128, par. 1, subd. [a]).

The rule was fully stated by Judge Pound, writing for the Court of Appeals, in *Matter of Leland* (219 N. Y. 387, 393–394): '' It may be broadly stated that the common law favors the rule that no restriction should be placed upon the choice of an executor, even though unsuitable persons are allowed to exercise the trust to the possible prejudice of creditors and legatees. Modern legislation enlarges the control of probate courts over improper testamentary appointees. In New York the necessary qualifications of an executor are described with minuteness. (Code Civil Procedure, §§ 2564–2567.) But the testator still enjoys the right to determine who is most suitable among those legally qualified to settle his affairs and execute his will, and his solemn selection is not lightly to be disregarded. Appointment is not to be refused merely because the testator's selection does not seem suitable to the judge. \* \* \* The courts will not undertake to make a better will nor name a better executor for the testator. They will not add disqualifications to those specified by statute, nor disregard testator's wishes by too liberal an interpretation of the specified disqualifications ''.

Objectants assert that there are sources other than section 94 of the Surrogate's Court Act whence that court derives power to deny appointment to the nominated executor. Section 40 of the Surrogate's Court Act is claimed to be one of these, empowering the Surrogate to '' administer justice in all matters relating to the affairs of decedents ''. The authorities previously cited do not suggest the existence of such power in this case.

Objectants seek also to invoke the court's jurisdiction and control over the conduct of attorneys. Whatever the extent of that power, the nominated executor here is involved. in his capacity as such, and not as lawyer. Moreover, the possibility of conflict between the several capacities of an executor is not peculiar to lawyers who are executors. There is no reason why lawyer's should be subject to a special disabling rule.

In any event, it is not essential to the determination of this case that we reconsider the scope of the rule limiting disqualification to the grounds specified in section 94, or that we rest it alone upon that ground. There are other cogent reasons why the court should not in this case displace the coexecutor chosen by the testator.

It will be recalled that when the testator executed his will in 1952 he was aware of his nominee's position with the corporation, and of his own disputes with the corporation. He named him nevertheless. Testator's knowledge of a possible conflict of interest militates against denying appointment to his choice

(cf. *Matter of Cohen,* 164 Misc. 98, 102, affd. 254 App. Div. 571, affd. 278 N. Y. 584).

In the event that the coexecutor's apparent conflict of interest should lead to misconduct — the presumption being strongly to the contrary (*Matter of Place,* 42 Hun 658, 4 N. Y. St. Rep. 533, 534 [General Term, First Dept., 1886], affd. 105 N. Y. 629; *Matter of Forte,* 149 Misc. 327, 334 [Surr. Ct., Kings Co., 1933]) — objectants will not be left without remedy (Surrogate's Ct. Act, § 99).

In *Matter of Place* (4 N. Y. St. Rep. 533, 534, *supra*), appointment of an administratrix was resisted because the remaining unadministered asset of the estate was a claim against her husband. The claim was then in suit, and an appeal from a judgment in the husband's favor was pending. General Term disposed of the objection as follows: '' The presumption on the other hand, is that she will discharge the duties which the law enjoins upon her as the administratrix of the estate. This will not require her personal services beyond the employment of skilful and competent counsel, who will be able to understand and present the case, for the decision of the appellate tribunal. And without proof that she will disregard this duty, it is not to be inferred that any danger exists of the least neglect or dereliction on her part. But if as a matter of fact she should fail to discharge this duty, then under subdivision 2 of section 2685 of the Code of Civil Procedure, the surrogate has been authorized to remove her from her office. For wherever an executor, or administrator, shall improvidently manage the estate, or property, committed to his, or her, charge, there the surrogate has been empowered to remove the delinquent person from the office to which he or she may have been appointed.''

It would be a serious matter to make any claim of conflict of interest a ground for disqualifying designated executors. Not only would it threaten to substitute the legatees' desires and views for the views of the testator, it would also undoubtedly engender a multitude of proceedings. Few estates would be certain to be free from such attack. Many estates would be subjected to extended proof-taking to determine whether the claimed conflict in fact existed.

Misconduct, not conflict in interest, merits removal of a fiduciary (Surrogate's Ct. Act, § 99). The statute provides for resolving claims between the estate and its representative (Surrogate's Ct. Act, § 209). This is reasonable. Any other view would automatically disqualify from appointment as executor a partner, a joint owner of property, a legatee, a creditor,

a debtor, a distributee, a spouse, or one who is a party to an executory contract with the testator. Few would remain eligible.

The order dismissing the objections and vacating the stay of the issuance of letters testamentary should be affirmed.

PECK, P. J., COHN, BASTOW and BOTEIN, JJ., concur.

Order unanimously affirmed, with $10 costs and disbursements to the respondent.