JAMESTOWN SAND & GRAVEL, a corporation, Plaintiff and Appellant,

v.

TRI–COUNTY ELECTRIC COOPERATIVE, INC., a corporation, Defendant and Appellee.

Civ. No. 10595.

Supreme Court of North Dakota.

July 27, 1984.

Hjellum, Weiss, Nerison, Jukkala, Wright & Paulson, Jamestown, for plaintiff and appellant; argued by John Hjellum, Jamestown.

Zuger & Bucklin, Bismarck, for defendant and appellee; argued by James S. Hill, Bismarck.

GIERKE, Justice.

This is an appeal by Jamestown Sand & Gravel, Inc. (Jamestown) from a judgment of the District Court of Stutsman County dismissing, on its merits, Jamestown's action against Tri-County Electric Cooperative, Inc. (Tri-County). We affirm.

Jamestown is a sand and gravel producing and marketing business. The seasonal operation, which runs approximately eight months of each year, generally ceases to operate during November and commences again the following March.

During 1973, Jamestown entered a ten-year agreement with Tri-County to have that electrical cooperative supply it with 480 high voltage power. During February 1981, an electrical shed owned by Jamestown was destroyed by fire resulting in damages to Jamestown of allegedly more than $33,000. Jamestown filed this action alleging that the damages it suffered were caused by Tri-County's negligent failure to "de-energize" or "turn off" the high voltage power being supplied to its facility. After an evidentiary hearing, the trial court determined that Tri-County had incurred no legal duty to terminate the power being supplied to the Jamestown operation. The trial court further determined that, assuming Tri-County had a duty to terminate the power, Jamestown did not prove that the failure to terminate the power supply was a proximate cause of the fire or the resultant damages.

We conclude that the following issue, raised by Jamestown, is dispositive of this appeal, making it unnecessary to discuss any other issue:

> Whether or not the trial court erred in its determination that Tri-County did not have a legal duty to terminate the high voltage power being supplied by it to the Jamestown facility.

In a negligence action, the determination of whether or not a duty exists is a question of law to be resolved by the court. *DeLair v. County of LaMoure*, 326 N.W.2d 55 (N.D.1982). On appeal, conclusions of law by the trial court are fully reviewable by this Court without regard to Rule 52(a), N.D.R.Civ.P. *See, Midland Diesel Service & Engine v. Sivertson*, 307 N.W.2d 555 (N.D.1981). However, findings of fact made by the trial court upon which a legal conclusion is based will not be set aside by this Court on appeal unless they are clearly erroneous. Rule 52(a), N.D.R. Civ.P.

The relevant provisions of the 1973 contract by which Tri-County agreed to

supply high voltage power to Jamestown state:

"2. Payment.

"a. ... Notwithstanding any provision of the Schedule and irrespective of Consumer's requirements for or use of electric power and energy, the demand for billing purposes hereunder shall be not less than 200 kilowatts for any billing period. In any event the Consumer shall pay to the Seller not less than $600.00 per month for 8 months/year or an annual minimum of $4800.00 for service or for having service available hereunder during the term hereof.

* * * * * *

"4. Continuity of Service.

"The Seller shall use reasonable diligence to provide a constant and uninterrupted supply of electric power and energy hereunder. . . .

* * * * * *

"6. Term.

"This Agreement shall become effective on the date first above written and shall remain in effect until 10 years following the start of the initial billing period and thereafter until terminated by either party giving to the other 3 months' notice in writing."

The trial court concluded that the written agreement did not obligate Tri-County to terminate the high voltage power supply to Jamestown during the four winter months each year that its sand and gravel business was not operating or at any other time during the ten-year term of the contract.

Jamestown concedes that the written contract, by its terms, does not obligate Tri-County to disconnect the power being supplied to Jamestown under that agreement. Jamestown asserts, however, that the circumstances surrounding the execution of the agreement and the parties' subsequent conduct warrants a determination that Tri-County had a duty to terminate the power in the fall of each year. Jamestown introduced evidence to show that as a result of conversations held between Charles Scrivens, Jamestown's president, and Vern Danielson, manager of member services for Tri-County when the 1973 agreement was executed, Scrivens believed that Tri-County had agreed to terminate the power supply during the fall of each year as soon as Jamestown would notify Tri-County that its sand and gravel operation was being shut down for the year. Jamestown also introduced evidence that during the contract period Jamestown notified Tri-County by telephone during the fall of some years, including the fall preceding the February 1981 fire, that Jamestown was shutting down its operation for the winter months and that the power being supplied to the operation should be terminated.

Tri-County introduced evidence that Jamestown never requested Tri-County to terminate the power supply during the winter months when Jamestown was not operating. Tri-County also introduced evidence that it was their understanding that Jamestown would notify them when its seasonal operation was being shut down only for purposes of insuring that Tri-County would not improperly bill Jamestown during the winter months and for allowing Tri-County, in its discretion, to terminate the power supply for maintenance or repair of lines or equipment during those winter months when such work would not interrupt Jamestown's sand and gravel operation.

With regard to this issue, the trial court made the following findings of fact:

"4. Each year ... [after the 1973 contract was signed] Mr. Scrivens or someone from Jamestown Sand & Gravel called Tri-County Electric Cooperative to advise that the season was over. Charles Scrivens was under the impression that the defendant, Tri-County Electric Cooperative, then cut off the power in the months he had no use for it.

"5. On November 14, 1980, Charles Scrivens called the office of Tri-County Electric Cooperative to advise that the plaintiff was closing down for the season. He thereupon assumed that the power would be disconnected to his plant. The power was not in fact disconnected, and subsequently an electrical fire oc-

curred, causing damages to the plaintiff in the amount of $33,603.97.

"6. The defendant, Tri-County Electric Cooperative, was obligated by contract to provide electricity and Jamestown Sand & Gravel was obligated to pay a certain amount per unit or a minimum charge per month up to eight months per year. There is nothing in the contract which requires the defendant to disconnect the power. The fact that Charles Scrivens thus assumed so did not make it so. His assumption was not based on any facts, it was based on his conclusion of what he wanted the contract to say and his interpretation of what Vern Danielson told him."

Having reviewed the record in this case, we conclude that the foregoing findings of the trial court are not clearly erroneous. There is substantial evidence upon which the trial court could find, as it did, that Tri-County did not agree, by written contract, by oral communication, or otherwise, with Jamestown, to terminate the high volt-age power during the winter months preceding the February 1981 fire. We further conclude that the trial court did not err in its determination that, under the circumstances, Tri-County did not have a legal duty to terminate the high voltage power being supplied by it to Jamestown under the 1973 agreement. Having no such duty, Tri-County cannot be held liable to Jamestown for its failure to terminate the power supply.

In accordance with this opinion, the judgment of the trial court dismissing Jamestown's action on its merits is affirmed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.