Carl JARMIN, Appellant,

v.

SHRINERS HOSPITALS FOR CRIP-
PLED CHILDREN and Faith United
Methodist Church of Williston, Appel-
lees.

Civ. No. 890207.

Supreme Court of North Dakota.

Jan. 18, 1990.

Brenda M. Zent of Farhart, Lian, Max-
son, Howard & Sorensen, Minot, for appel-
lant.

Vern C. Neff of Bjella, Neff, Rathert,
Wahl & Eiken, Williston, for appellees.

VANDE WALLE, Justice.

Carl Jarmin appealed from a county
court order removing him as personal rep-
resentative of the estate of Doris D. Corrie.
Jarmin contends that there was no "cause"
shown to justify his removal as personal
representative. We affirm.

Doris D. Corrie died testate on June 21,
1988. Her will was admitted into informal
probate in the county court for Williams
County on June 27, 1988. Corrie's will
nominated Carl Jarmin to be the personal
representative of her estate. Jarmin was
appointed personal representative, and he
was subsequently issued letters testamen-
tary.

While acting as personal representative,
Jarmin filed an objection in the county
court to a final accounting issued by the
First National Bank & Trust Company of
Williston as Doris Corrie's conservator.[1]
The final accounting showed that approxi-
mately $313,000 in cash was being held by
the Bank in its capacity as Corrie's conser-
vator. The money held by the Bank repre-
sented the total assets of Doris Corrie's
estate. Jarmin objected to the final ac-
counting on the ground that he was enti-
tled to money from an account which was

---

1. On February 21, 1979, the First National Bank & Trust Company of Williston was appointed as conservator of Doris Corrie's property, and Carl Jarmin was appointed as her guardian.

held by Doris Corrie and himself in joint tenancy.[2] Specifically, Jarmin claimed that he had a right to approximately $49,898.77 of the funds held by the conservator, plus interest accumulated during the period of the conservatorship.

Jarmin, acting pursuant to his powers as personal representative, subsequently withdrew the $313,000 from the First National Bank & Trust Company of Williston. At the time of the withdrawal, Jarmin was accompanied by his personal attorney from Minot, North Dakota. Jarmin did not consult with the attorney for the estate prior to the withdrawal, nor did he notify the estate's devisees and legatees of his action. Furthermore, Jarmin offered no explanation to the Bank for his withdrawal of the funds. The withdrawal was made after Jarmin had filed his objection to the Bank's final accounting, but before the county court had an opportunity to render a decision regarding the accounting. According to the testimony in the record, Jarmin stated that he deposited the money at a bank in Minot. No individual or organization with any interest or involvement in Corrie's estate resides in Minot and, in fact, most of the participants live in the city of Williston. Under the terms of Corrie's will, Jarmin was not required to furnish a bond as personal representative and, accordingly, Jarmin was acting without a bond at the time of the withdrawal.

The Shriners Hospitals for Crippled Children and the Faith United Methodist Church of Williston are residuary legatees and devisees of the entire estate of Doris Corrie. On March 29, 1989, the Shriners Hospitals and Faith United petitioned the county court to remove Carl Jarmin as personal representative. Noting Jarmin's potential conflict of interest and actions with regard to the estate funds, the Shriners Hospitals and Faith United argued that Jarmin should be removed "for cause" pursuant to NDCC § 30.1–17–11 (UPC 3–611), on the basis that his "removal would be in the best interests of the estate." After a hearing on the petition, the county court entered an order removing Jarmin as personal representative. A successor personal representative was appointed by the court. Jarmin subsequently filed a timely notice of appeal from the county court's order.[3]

The only issue on appeal is whether the county court erred in removing Jarmin as personal representative of Doris Corrie's estate. Jarmin argues that the county court erred in its conclusion of law that "cause" existed for removal and that his removal would be in the best interest of the estate.

2. The account in controversy was originally established by J. D. Corrie in 1959. Upon the death of J. D. Corrie, the funds became the sole property of Doris Corrie. Doris Corrie briefly designated Melvin Carlson as beneficiary of the account from the date of January 18, 1977 to March 14, 1977. On November 15, 1978, approximately three and one-half months before Carl Jarmin was appointed as her guardian, Doris Corrie added Jarmin's name to the account.

3. Rule 54(b), NDRCivP, was designed to avoid the piecemeal appeal of cases and has been held to be applicable to probate proceedings. *See Matter of Estate of Starcher,* 447 N.W.2d 293 (N.D.1989); *Matter of Estate of Stuckle,* 427 N.W.2d 96 (N.D.1988).

In *Matter of Estate of Starcher,* 447 N.W.2d at 295, we delineated the relationship of Rule 54(b) to unsupervised probate administrations by denoting that:

"[I]n an unsupervised administration, 'each proceeding before the court is independent of any other proceeding involving the same estate,' although 'petitions for formal orders of the court may combine various requests for relief in a single proceeding if the orders sought may be finally granted without delay.' [Citation omitted.] Finality in an unsupervised administration requires a concluding order on each petition [citation omitted], whereas finality in a supervised administration generally requires 'an order approving distribution of the estate and discharging the personal representative, or other order terminating the proceeding.' "

We believe that Jarmin's appeal from his removal as personal representative was independent from his other proceeding regarding the final accounting, and was made from a concluding order on the legatee's petition for removal. Moreover, this Court has, in the past, entertained cases on appeal from similar judgments removing personal representatives. *See Matter of the Estate of Kjorvestad,* 304 N.W.2d 83 (N.D. 1981).

Section 30.1–17–11(1), NDCC, allows any person interested in an estate to petition a court for the removal of the personal representative for cause. Under § 30.1–17–11(2), cause exists "when removal would be in the best interests of the estate." In the instant case, the county court entered findings of fact which stated that Jarmin believed he was the joint owner with Doris Corrie of a $49,898.77 account; that Jarmin believed he was entitled to the interest accumulated on the account from the date of its establishment; that Jarmin knew the residuary devisees and legatees claimed the account to be part of the estate of Doris Corrie; that Jarmin understood that there would be a conflict of interest between his fiduciary duty and obligation as personal representative and his personal claim to the proceeds; that Jarmin, as personal representative, withdrew all of the assets of the estate from the conservator and testified that he deposited the funds in a Minot bank; and that Jarmin had not furnished any bond as personal representative because none was required by the terms of Corrie's will. From these findings, the county court concluded that the removal of Jarmin as personal representative would be in the best interests of the estate, and that cause sufficient to satisfy § 30.1–17–11 existed for his removal.

Jarmin does not argue that the findings of fact entered by the county court were clearly erroneous. *See* Rule 52(a), NDRCivP. Rather, Jarmin contends that the court erred in concluding that the facts constituted sufficient cause to justify his removal as personal representative. In this regard, Jarmin claims that the joint ownership of estate property by a personal representative is not a sufficient conflict of interest to justify the removal of the personal representative.

■ Initially, we note that a trial court's conclusions of law are not subject to the clearly erroneous rule applicable to findings of fact, and are thus fully reviewable upon appeal. *Norden Laboratories, Inc. v. Rotenberger*, 358 N.W.2d 518 (N.D. 1984); *Jamestown Sand v. Tri–County Elec. Co-op*, 351 N.W.2d 727 (N.D.1984);

*In Interest of Kupperion*, 331 N.W.2d 22 (N.D.1983); *E.E.E., Inc. v. Hanson*, 318 N.W.2d 101 (N.D.1982). However, we also recognize that the removal of a personal representative necessarily involves the use of discretion by the trial court, and that an order removing a personal representative will not be set aside on appeal absent an abuse of discretion. *See Matter of Estate of Sumpter*, 166 Mich.App. 48, 419 N.W.2d 765 (1988); *In re Finizie's Appeal From Probate*, 6 Conn.App. 115, 503 A.2d 623 (1986); *Matter of Estate of Humphrey*, 141 Mich.App. 412, 367 N.W.2d 873 (1985); *Matter of Estate of Counts*, 217 Mont. 350, 704 P.2d 1052 (1985); *Estate of Jaworski v. Jaworski*, 479 N.E.2d 89 (Ind.Ct.App.1985); *Matter of Estate of Lovell*, 344 N.W.2d 576 (Iowa App.1983); *In re Estate of Moss*, 183 Neb. 71, 157 N.W.2d 883 (1968). *See also* 31 Am.Jur.2d *Executors and Administrators* § 277 (1989).

■ The mere fact that a personal representative has an interest in the estate he or she is administering is, generally, an insufficient conflict of interest to justify the removal of the personal representative. *See* 31 Am.Jur.2d *Executors and Administrators* § 281 (1989). Thus, courts have held the removal of an executor to be improper when the executor was simply a creditor of the estate, or had an interest in personal property of the estate, or had developed some hostilities with estate heirs. *See, e.g., Tyson v. North Carolina Nat. Bank*, 53 N.C.App. 189, 280 S.E.2d 478 (1981), *mod. on other grounds*, 305 N.C. 136, 286 S.E.2d 561 (1982) [no conflict of interest is created by mere fact that executor is also an estate creditor]; *Johnson v. Macaboy*, 226 Md. 23, 171 A.2d 474 (1961) [executor's claim to personal property of estate was not grounds for removal]; *In re Estate of Miles*, 632 S.W.2d 323 (Mo. App.1982) [hostile relationship between heirs and executor was insufficient grounds for removal]. In accordance with this general principle, it has also been held that a personal representative should not be removed merely because he or she claimed joint ownership of certain estate property with the decedent. *See, e.g., In re Meyer's Estate*, 130 Cal.App.2d 145, 278

P.2d 471 (1955); *aff'd* 159 Cal.App.2d 764, 324 P.2d 597 (1958).

The rationale behind this general principle is clear. If a mere interest in an estate creates cause to remove a personal representative, few people would ever be able to serve as a personal representative. The Appellate Division of the New York Supreme Court aptly noted this rationale when it stated:

"Any other view would automatically disqualify from appointment as executor a partner, a joint owner of property, a legatee, a creditor, a debtor, a distributee, a spouse, or one who is a party to an executory contract with the testator. Few would remain eligible." *In re Foss' Will*, 282 A.D. 509, 513, 125 N.Y.S.2d 105, 109 (1953).

In North Dakota, as in other states, it is commonplace for individuals to hold property in joint tenancy. This type of ownership is especially prevalent in family situations, as when property is held jointly between spouses, or between parents and children. We believe that it would be ill-advised to hold that individuals cannot serve in a personal representative capacity merely because they own property jointly with a decedent. Thus, we agree with the decision in *Meyer's Estate, supra,* that a personal representative should not be removed solely because he or she claims a joint interest in estate property of the decedent. Under those circumstances, we believe that it would be improper for a court to conclude that cause existed for removal, and that it would be an abuse of the court's discretion to remove a personal representative for conflict-of-interest purposes on that basis alone.

The instant case, however, involved more than a mere "joint interest" in estate property or a conflict of interest. Here, Jarmin and his personal attorney actually withdrew the entire estate of $313,000 in cash from the First National Bank & Trust Company of Williston and transferred the funds to a Minot bank. Jarmin offered no explanation for the withdrawal, and failed to consult or even notify the attorney for the estate and the legatees of his actions.

Jarmin's testimony that he deposited the $313,000 in a Minot bank was the only evidence presented to the county court regarding the deposit of the estate's funds. No deposit slip or other form of receipt from the Minot bank was ever entered into evidence. Moreover, the testimony indicates that no individual or organization with any connection to or interest in the estate resides in Minot, and that there were numerous banks in the city of Williston where the funds could have been deposited. All of these events occurred shortly after Jarmin filed his objection in county court to the First National Bank & Trust Company of Williston's final accounting, and at a time when Jarmin was acting unbonded, as Corrie's will did not require Jarmin to post a bond.

We believe that the county court could have properly concluded that the removal of Jarmin under NDCC § 30.1–17–11 "would be in the best interests of the estate." In light of Jarmin's interest in the joint tenancy account of Corrie's estate, his irrational actions in dealing with the estate funds gave the appearance that Jarmin was furthering his own interests at the expense of the estate and its heirs. It appears that Jarmin's primary concern was to protect his share of Corrie's estate to the detriment of the remaining legatees, or to penalize the Bank as Corrie's conservator because it did not agree with his position concerning the account in question. Because the instant case involved more than a mere "joint interest" in estate property or a conflict of interest, we are not prepared to state that the county court abused its discretion in concluding that Jarmin should be removed as personal representative.

Accordingly, we affirm the order of the county court.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.